IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
UNIFIED SCHOOL DISTRICT 467,
WICHITA COUNTY, KANSAS,

          Plaintiff,
     v.


LELAND A. GRAY ARCHITECTS, LLC,

          Defendant,

CUSTOM CONSTRUCTION & DESIGN, INC.,        Case No. 14-1025-RDR

          Defendant/Third-
          Party Plaintiff,
     v.

REFRIGERATION SUPPLIES DISTRIBUTOR,
INC.; MITSUBIUSHI ELECTRIC AND
ELECTRONICS USA, INC.,

          Third-Party Defendants.
```

**MEMORANDUM AND ORDER**

This matter is presently before the court upon the motion of third-party defendant Mitsubishi Electric and Electronics USA, Inc.'s (MEUS) motion to dismiss. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

This action arises from renovation and construction projects undertaken by Unified School District 467 (USD 467) in June 2009. Specifically, USD 467 sought to install heating and cooling units (HVAC systems) in their senior and junior high school building and the elementary school. USD 467 sought bids for the construction of

the all-purpose room for the senior and junior high.  Prior to seeking bids, USD 467 retained Leland A. Gray Architects, LLC to provide professional architectural and design services for the multiple projects.  On December 3, 2009, USD 467 entered into a contract with Custom Construction & Design, Inc. (CC&D) to serve as its general contractor.

CC&D entered into a contract with Refrigeration Supplies Distributor, Inc. (RSD) to purchase the HVAC equipment that was ultimately installed in the school district's buildings.  RSD specified HVAC equipment from MEUS for the buildings.  MEUS sold the equipment to RSD.  The HVAC installations occurred at some point after August 23, 2010.  Problems began to occur in 2010 and throughout 2011.  According to CC&D, a representative from RSD visited the school district on ten separate occasions from October 13, 2010 through May 24, 2013 to inspect the installed HVAC systems.  CC&D further alleges that a MEUS representative inspected the HVAC system on May 21, 2012.  USD 467 had an engineering firm investigate the HVAC system in November 2012.  This investigation purportedly revealed many deficiencies.  The school district represents that it was forced to hire a separate entity to correct the alleged design and construction defects associated with the HVAC system.

II.

USD 467 initially filed its lawsuit against Gray Architects and

CC&D on October 7, 2013 in state court.  The school district's claims against CC&D include (1) breach of contract; (2) breach of warranty; (3) breach of implied warranty; and (4) negligence. The case was removed to this court on January 17, 2014.  On September 12, 2014, CC&D filed a motion to join additional parties, which was granted on October 6, 2014. CC&D filed its Third-Party Complaint against MEUS and RSD on October 7, 2014.

In its motion to dismiss, MEUS contends that CC&D's claims against it fail to state a claim upon which relief can be granted. Specifically, MEUS argues that (1) CC&D's breach of implied warranty claim fails because there is no liability for breach of implied warranties to a remote seller of a product for pure economic loss where there is no privity of contract; and (2) CC&D's tort-based claims sound in comparative implied indemnity and negligence, and are either barred by the statute of limitations or fail to state a claim.

### III.

Fed.R.Civ.P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal

discovery rules and availability of summary judgment to dispose of unmeritorious claims. Id.

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint....Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223-24 (10th Cir. 2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (clarifying and affirming Twombly's probability standard). Allegations that raise the specter of mere speculation are not enough. Corder, 566 F.3d at 1223-24.  The court must assume that all allegations in the complaint are true. Iqbal, 556 U.S. at 678.  "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'"  Bean v. Norman, 2010 WL 420057 at *2 (D.Kan. Jan.29, 2010)(quoting Swierkiewicz, 534 U.S. at 511). The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. Hall v. Witteman, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. Id. Second, the

court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. Id.

The court notes that counsel for CC&D relies upon Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and cases citing it in support of its argument that dismissal is appropriate only when it appears beyond doubt that plaintiff can prove no set of facts that would entitled it to legal relief.  As noted by the review of the law set out above, it may be time for counsel to update his briefs.  Conley is no longer valid.  The Supreme Court made clear in Twombly that the Conley standard has "earned it retirement."  Twombly, 550 U.S. at 562-563.  Twombly makes clear that a plaintiff must plead "more than labels and conclusions," and "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at at 555. Rule 8(a) requires that there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

IV.

MEUS initially contends that CC&D's breach of implied warranty claims should be dismissed because a remote product seller is not liable to a downstream, non-privity purchaser for mere economic loss in the absence of personal injury.  In making this argument, MEUS points out that CC&D has not pleaded any privity of contract between it and MEUS.

The law in Kansas is clear.  "[I]mplied warranties of fitness

and merchantability are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer." Professional Lens Plan, Inc. v. Polaris Leasing Corp., 234 Kan. 742, 675 P.2d 887, 898-99 (1984).

CC&D attempts to avoid the holding of Professional Lens by making two claims: (1) MEUS was not a remote seller of the heating and cooling systems because it was involved in the manufacture, design, installation and service of the units for the school project; and (2) MEUS was in privity with it because RSD was an authorized dealer for MEUS.

In making the former argument, plaintiff relies upon Ritchie Sand, Inc. v. Eagle Iron Works, 1989 WL 31408 (D.Kan. Mar. 14, 1989) for support. Ritchie Sand asserted several claims against Eagle Iron Works, including breach of implied warranties, arising from the construction of a sand plant. Ritchie Sand contacted Eagle Iron about the design of the plant, including an underplant conveyor system. Eagle Iron designed the plant and Ritchie Sand purchased it through an Eagle Iron distributor. Ritchie Sand never paid Eagle Iron for its design or engineering services. The charge was incorporated within the cost of the sand plant. Ritchie Sand then erected the plant with the equipment manufactured by Eagle Iron and

other defendants and the aid of several local contractors.  Ritchie Sand's claims against Eagle Iron were limited to the underplant conveyor system.  Eagle Iron sought summary judgment on the implied warranty claims because it was not in privity with Ritchie Sand.  Judge Crow denied summary judgment to Eagle Iron, finding that material issues of fact remained regarding the existence of an agreement between Richie Sand and Eagle Iron to provide certain design services.  Ritchie Sand, 1989 WL 31408 at *8.  Judge Crow found it unnecessary to reach the issue of privity between Ritchie Sand and Eagle Iron because Ritchie Sand's claims against Eagle Iron were based on a purported service contract with Eagle Iron.  Id. at *9.  The court found that this was not a case where the claims were based on goods passing through a chain of distributors or where a remote seller/manufacturer allegedly sold defective products through a distributor to an ultimate consumer with no knowledge by the manufacturer of whom the ultimate purchaser is or what the particular needs of purposes are for the goods sold.  Id.  The court did, however, go on to say:  "Assuming plaintiff had brought implied warranty claims upon the equipment specifically manufactured by Eagle, the court would agree with the Fourth Circuit Court of Appeals that Kansas law may recognize contractual privity where extensive personal contacts existed between the manufacturer and purchaser, despite the fact the purchase was conducted through an authorized

dealer. Fullerton Aircraft Sales v. Beech Aircraft Corp., 842 F.2d 717, 722 (4th Cir.1988). See also Wood Products, Inc. v. CMI Corp., 651 F.Supp. 641, 649 (D.Md.1986); Sanco, Inc. v. Ford Motor Co., 579 F.Supp. 893, 899 (S.D.Ind.1984), aff'd, 771 F.2d 1081 (7th Cir.1985)." Id.

With this recitation of Ritchie Sand, the court turns to the specific arguments raised by the parties. CC&D believes that Ritchie Sand applies here because it has made allegations that MEUS "designed and installed" and "inspected and serviced" the equipment. MEUS, on the other hand, contends that CC&D's allegations in the complaint are insufficient to bring them within the facts of Ritchie Sand.

Frankly, the efforts of CC&D to place this case within the confines of Ritchie Sand appear a bit strained. CC&D has suggested that MEUS was involved in the "design and installation" and the "inspection and service" of the HVAC system for the school district. The court recognizes that the third-party complaint does contain some allegations of this nature, even though they are somewhat vague. The third-party complaint fails to provide any additional details on these matters. Nevertheless, these allegations do suggest that MEUS was involved to a greater extent than as a mere seller. Whether that actually happened or not cannot be determined on a motion to dismiss. There is an allegation that a MEUS employee did visit the school after

8

installation to inspect the system.  There are also allegations that MEUS made certain promises and affirmations in connection with the sale of the equipment.  At this point, the court is not persuaded that MEUS is entitled to dismissal of plaintiff's implied warranties claims.  The circumstances surrounding the relationship of the parties remains to be determined.  In addition, the court finds that the third-party complaint also contains sufficient allegations to demonstrate that privity with MEUS may exist due to the involvement of one its dealers, RSD.  See Meyers v. Garmin Int'l, Inc., 2014 WL 273983 at *7 (D.Kan. Jan. 24, 2014).  Again, the complaint is not a model of clarity on this point, but the court believes there are sufficient allegations to allow CC&D to conduct discovery on this issue.  Plaintiff has alleged with requisite plausibility that RSD, MEUS's authorized dealer, was acting as MEUS's agent and that, as a result, privity between CC&D and MEUS exists.  The court also agrees with Judge Crow that Kansas law may recognize contractual privity where extensive personal contacts existed between the manufacturer and purchaser, despite the fact that the purchase was conducted through an authorized dealer.  All of these issues can be addressed in a summary judgment motion.  But, for the purposes of MEUS's motion to dismiss, it must be denied because CC&D has made plausible claims of breach of implied warranties.

V.

The court next turns to CC&D's claims of indemnity, contribution and negligence. In these claims, CC&D seeks to recover from MEUS any liability it may have to USD 467. MEUS initially argues that CC&D's tort-based claims sound in comparative implied indemnity and negligence, and are either barred by the statute of limitations or fail to state a claim. MEUS argues that although CC&D only identifies its claim against it as an "indemnity claim" it is actually a claim for comparative implied identity. MEUS contends that CC&D has stated no claim for express contractual indemnity or implied contractual indemnity. MEUS further suggests that CC&D's claim for contribution is not available because it has been eliminated in Kansas. MEUS then argues that CC&D's claims of comparative implied indemnity and negligence are barred by the applicable two-year statute of limitations of K.S.A. 60-513.

The court begins with a review of the allegations contained in CC&D third-party complaint concerning indemnity and contribution. In the third-party complaint, CC&D makes the following allegations against MEUS on these claims:

> Defendant/third-party plaintiff CC&D denies any liability to plaintiff School District, and denies all the plaintiff's allegations. However, if CC&D is adjudged to be liable to plaintiff for any of its alleged damages, then CC&D is entitled to indemnification and/or contribution from Mitsubishi to the extent that plaintiff's damages were caused or contributed to be caused by the acts, omissions and/or negligence of Mitsubishi and/or its employees regarding the Mitsubishi HVAC Equipment and

>   installation instructions that was sold to CC&D, and for
>   such damages awarded to the plaintiff, or in the
>   alternative, any damages awarded to the plaintiff should
>   be apportioned between the plaintiff, CC&D, LAGA, RSD,
>   Mitsubishi and any others according to the relative degree
>   of fault, if any.

Kansas recognizes three types of indemnity claims: (1) express contractual indemnity; (2) implied contractual indemnity; and (3) comparative implied indemnity. Express contractual indemnity arises where there is a contract of indemnity, such as a hold harmless agreement. Implied contractual indemnity arises when one is compelled to pay what another party ought to pay; generally, when a party without fault is made to pay for a tortious act of another and seeks indemnity from the party at fault. Although this theory has frequent viability in the context of respondeat superior, it is not limited to this context. See, e.g., Haysville U.S.D. No. 261 v. GAF Corp., 233 Kan. 635, 666 P.2d 192 (1983). Comparative implied indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability. Schaefer v. Horizon Building Corp., 26 Kan.App.2d 401, 985 P.2d 723 (1999).

MEUS argues that CC&D has failed to state a claim under any of the aforementioned theories of indemnity. MEUS initially notes that CC&D has not noted the presence of a contract between the parties that would allow express contractual indemnity. MEUS next argues

11

that CC&D has failed to state a claim for implied contractual indemnity because it has failed to plead any facts from which the court could infer a relationship directly between MEUS and CC&D. Finally, MEUS contends that CC&D has not stated a valid claim for comparative implied indemnity because CC&D has not pleaded facts that show MEUS could be liable to CC&D for any portion of the potential judgment against CC&D.

The court agrees with MEUS that CC&D has failed to state a claim for express contractual indemnity.  There is no mention of a contract between the parties that would allow such a claim.  CC&D has failed to even address this argument in their responses.

The court next turns to the argument of MEUS that has failed to state a claim for implied contractual indemnity.  MEUS has suggested that CC&D has failed to plead any facts from which the court could infer a relationship directly between CC&D and it.

As noted previously, implied contractual indemnity is generally used in cases involving an employer/employee relationship or principal/agent relationship.  However, Kansas courts have not limited implied contractual indemnity to cases where an employer/employee or principal/agent relationship exists.  <u>Danaher v. Wild Oats Markets, Inc.</u>, 2011 WL 855793 at *4 (D.Kan. Mar. 9, 2011); <u>Hartford Fire Ins. Co. v. P&H Cattle Co., Inc.</u>, 2005 WL 3576939 at *3 (D.Kan. Dec. 29, 2005).  MEUS has argued that CC&D has failed to

plead any facts from which the court could infer relationship between the two parties. We do not agree. As suggested previously during the discussion of the implied warranty claims, the court believes that there are enough allegations in the third-party complaint to support a plausible claim of privity between the parties based upon CC&D's relationship with RSD, a distributor for MEUS. Again, the circumstances of the relationship remain to be determined. Having carefully reviewed CC&D's complaint, the court is persuaded that CC&D has stated a plausible claim of implied contractual indemnity.

Finally, the court considers MEUS' contention that CC&D has stated only a claim for comparative implied indemnity, to the extent that such a claim is still viable in Kansas. MEUS asserts CC&D has not pleaded facts that show it could be liable to CC&D for any portion of the potential judgment against CC&D. In making this argument, MEUS relies heavily upon Judge Lungstrum's decision in <u>Burlington Northern v. Cosco North America, Inc.</u>, 2003 WL 21685908 (D.Kan. July 15, 2003).

CC&D responds that it is under no obligation at this time to allege or commit to any particular type of indemnity claim. CC&D further argues that is has alleged sufficient facts to state a claim for comparative implied indemnity that is complementary to Kansas' comparative negligence principles. CC&D also contends that MEUS has improperly argued that its indemnity claim is tied to its negligence

claim. Thus, CC&D asserts that the court should not reach a determination that the two-year statute of limitations contained K.S.A. 60-513(a)(4) is applicable here.

As noted above, the court is not persuaded that CC&D's indemnity claim must be considered only as one for comparative implied indemnity. The court does not believe that Burlington Northern, the case relied upon by MEUS, requires a different result. There, Judge Lungstrum determined that the indemnity claim of the third-party plaintiff could only be considered as a claim for comparative implied indemnity, not as one for implied contractual indemnity. Burlington Northern, 2003 WL 21685908 at * 4. In reaching this conclusion, Judge Lungstrum found that there was no allegation of a relationship between the third-party plaintiff and the third-party defendant. Id. Here, contrary to Burlington Northern, the court has determined that there are sufficient allegations, although scant, to suggest a plausible relationship between MEUS and CC&D. As a result, the court is also not persuaded that CC&D's indemnity claim must be lumped together with CC&D's negligence claim as tort-based. The court may ultimately reach this conclusion when all the facts are set forth in a motion for summary judgment, but we are not inclined to do so on a motion to dismiss.

With this decision, the court considers the argument raised by MEUS on the applicable statute of limitations. MEUS argues that

14

CC&D's indemnity and negligence claims were not timely filed.  MEUS' argument is based upon the premise that CC&D's indemnity claim can only be considered as one for comparative implied indemnity.  Thus, both claims are subject to the two-year statute of limitations contained in K.S.A. 60-513(a)(4).  With the application of the two-year period of limitations, MEUS contends that these claims are barred because they began to run at least by the winter of 2010 when the school district determined that problems existed in the HVAC system.  Since the third-party complaint was filed on October 7, 2014, MEUS argues that the comparative implied indemnity and negligence claims are barred by the statute of limitations.

CC&D raises a variety of arguments in response to contentions of MEUS.  First, CC&D argues that the statute of limitations for an indemnity claim is three years.  With the application of the application of the three-year statute of limitations, CC&D contends there is no dispute that CC&D indemnity claim was timely.  Second, CC&D asserts that, even if its only indemnity claim is one for comparative implied indemnity which is tied to its negligence claim, these claims of indemnity and negligence were timely filed under the two-year statute of limitations of K.S.A. 60-513(a)(4).  CC&D argues that a genuine dispute remains concerning when the substantial injury first occurred and when such injury was reasonably ascertainable by the school district.  CC&D suggests that the school district could

15

not have known about the fact and extent of their injuries until the independent engineering firm conducted an inspection and issued findings in November 2012.  With this date as the date of accrual, CC&D contends that its third-party complaint against MEUS was timely.

When assessing a statute of limitations argument upon a motion to dismiss, the question before the court is whether "the dates given in the complaint make clear that the right sued upon has been extinguished."  Aldrich v. McCulloch Prop., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); see also Dummar v. Lummis, 543 F.3d 614, 619 (10th Cir. 2008)(if pivotal question for application of statute of limitations is apparent on the face of the complaint, the issue may be resolved on a motion to dismiss).

Under Kansas law, a tort action generally accrues when:  "the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury becomes reasonably ascertainable to the injured party. . ."  K.S.A. 60-513(b).

The parties are in apparent agreement that CC&D's claims were timely filed if the three-year statute of limitations contained in K.S.A. 60-512 applies.  This statute of limitations would appear to apply to CC&D's implied contractual indemnity claim.  See U.S. Fidelity & Guar. Co. v. Sulco, Inc., 939 F.Supp. 820, 826 (D.Kan.

1996). Even assuming that K.S.A. 60-513(a)(4) applies to CC&D's claims of indemnity and negligence, the court is not convinced that these claims are barred. It is not clear from the face of the school district's complaint when the problems of the HVAC system became reasonably ascertainable to it. Although MEUS argues that the school district should have known of the cause of their injuries much earlier, the court finds that this issue requires further development of the record.

Finally, the court turns to MEUS' contention that the claim of contribution has been eliminated in Kansas. There is some support for this position. See U.S. Fidelity & Guar. Co., 939 F.Supp. at 823. However, there are also a number of Kansas cases which continue to use contribution and indemnity interchangeably. See Gaulden v. Burlington Northern, Inc., 232 Kan. 205, 654 P.2d 383, 391 (1982); Schaefer v. Horizon Bldg. Corp., 26 Kan.App.2d 401, 985 P.2d 723, 725 (1999); Blackburn, Inc. v. Harnischfeger Corp., 773 F.Supp. 296, 299 (D.Kan. 1991). Under the present allegations, the court will allow this claim to continue at this time. The court will, however, examine it in a greater detail if MEUS raises it on a motion for summary judgment.

**IT IS THEREFORE ORDERED** that the motion to dismiss of third-party defendant Mitsubishi Electric and Electronics USA, Inc. (Doc. # 63) be hereby granted in part and denied in part. Third-party

plaintiff Custom Construction & Design, Inc.'s claim for express contractual indemnity, to the extent that such a claim was asserted, shall be dismissed.  The remainder of the third-party defendant's motion to dismiss shall be denied.

**IT IS SO ORDERED.**

**Dated this 30th day of June, 2015.**

                                        **s/RICHARD D. ROGERS**
                                        **UNITED STATES DISTRICT JUDGE**